# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**ELEKE DAVIS**                                                                                                  **MOVANT**

v.                                                    **No. 2:03CR144-M**

**UNITED STATES OF AMERICA**                                            **RESPONDENT**

## MEMORANDUM OPINION

This matter comes before the court on the motions of Eleke Davis to modify his term of imprisonment [49] under 18 U.S.C. § 3582(c) and to vacate, set aside, or correct his sentence [48] under 28 U.S.C. § 2255. For the reasons set forth below, the instant motions shall be denied.

### Facts and Procedural Posture

On December 17, 2002, Drug Enforcement Agency, Illinois State Police, and Chicago Police officers executed a search warrant at 4818 West Polk, Chicago, and found Eleke Davis, defendant, and another man sitting at a table cutting up cocaine base and cocaine. Both men were arrested.

While out on bond, Davis was arrested on September 8, 2003, in Clarksdale, Mississippi, with approximately 58 grams of cocaine base (crack cocaine) in the car he was driving. On that date, a confidential informant, whose information and assistance had resulted in previous drug seizures and arrests, reported that he had just seen Davis in the "Brickyard" area of Clarksdale with about two ounces of crack cocaine. The informant reported that Davis was in his sister's car, a grey Oldsmobile Alero, and that Davis had the crack in a compartment under the dash on the driver's side – and that Davis was going to the "Riverton" area of Clarksdale.

About an hour after the receiving the information, the Clarksdale drug investigator and an Mississippi Bureau of Narcotics agent found the grey Alero in the Riverton area. The car was

stopped in the middle of the street, with a black male driver, and several black males standing around the car. After spotting the Alero, the investigators circled the general area, waiting for the car to leave so that they could make a stop and conduct a search of the car in a safer area. Their plans were interrupted when they were informed that a fight was in progress in the nearby Monroe Circle apartment complex. In response, the investigators drove to a location near Monroe and waited for uniformed officers to arrive before going on the scene. As they waited, the grey Alero pulled onto and stopped in the middle of Monroe Street. A black male wearing a white tee shirt opened the trunk of the car, reached inside, closed the trunk and then headed on foot in the direction of the Monroe Circle apartments. Concerned that a weapon had just been retrieved, the investigators moved in without waiting for uniformed officers.

When the investigators pulled up behind the car with their blue lights flashing, Reginald Jones approached the driver's side door of the car. He explained that he was going to move the car. Jones stated that "Hogshead" had just driven up and asked Jones to move the car because he did not have a driver's license. Jones stated that Hogshead was wearing a red headband, a white tee shirt, and shorts. Jones then pointed at Eleke Davis indicating that he was Hogshead.

The Clarksdale investigators searched the car and found approximately 58.8 grams of crack cocaine in a clear plastic bag in an open compartment under the dash on the driver's side. After the crack was found, uniformed officers escorted Davis to the Alero. Davis denied having just driven the car, but admitted that his cell phone was in the vehicle and that the car was his sister's. Davis was placed under arrest and taken to the police department. On September 11, 2003, Davis escaped Coahoma County Jail by posing as another inmate and was apprehended later.

On October 30, 2003, Davis was indicted in the Northern District of Mississippi for possession with the intent to distribute in excess of 50 grams of a mixture and substance

containing cocaine base, crack cocaine. Davis was arraigned on November 12, 2003, with Robert S. Mink appearing as appointed counsel. On February 9, 2004, Davis' trial on the one count indictment commenced. After the jury was dismissed for the day, Davis petitioned the court to dismiss appointed counsel and to allow him to proceed *pro se*. The court granted his motion to allow self-representation and directed Mr. Mink to act as standby counsel. On February 10, 2004, the jury returned a guilty verdict.

Prior to sentencing, Mr. Mink filed several objections to Davis' presentence report. At sentencing, on May 27, 2004, the court rejected Davis' objections and sentenced him within the guideline range as a career offender to 560 months with 5 years supervised release. Davis appealed. On May 20, 2005, the United States Court of Appeals for the Fifth Circuit affirmed Davis' conviction. On April 17, 2006, Davis filed both the current motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, and an addendum containing the motion to modify his term of imprisonment under 18 U.S.C. § 3582(c).

## The Movant's Claims Under 28 U.S.C. § 2255

In his motion under 28 U.S.C. § 2255, Davis argues: (1) the government failed to prove the substance in question was crack cocaine; (2) the court abused its discretion and prejudiced him by accepting his request to waive his constitutional right to counsel; (3) he was prejudiced by the government's failure to prove a certified weight regarding the controlled substance; (4) he was denied effective assistance of counsel during his trial and on direct appeal; (5) the court abused its discretion by allowing his appointed counsel, Robert S. Mink, to represent him at sentencing and on direct appeal; and (6) the indictment is defective due to a constructive amendment or court error in instructing the jury. None of these grounds has merit.

**Insufficiency of Evidence**

Davis alleges that the government failed to prove that the substance in his possession was crack cocaine. He argues that the terms "cocaine" and "cocaine base" are synonymous and refer to identical substances – and that the use of these terms results in an ambiguous application of the sentencing provisions of 21 U.S.C. § 841(b). He further contends that because of this ambiguity his offense level should be determined by the application of the guideline range for powder cocaine, not crack cocaine. These arguments address the guideline calculations used in determining his sentence. A district court's calculation or application of the sentencing guidelines standing alone is not the type of error cognizable under § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th), *cert. denied*, 516 U.S. 1165 (1996). However, even assuming that his contentions are cognizable under § 2255, they are without merit.

Davis challenges his conviction for possession of cocaine base (crack cocaine), and his resulting sentence by arguing that the government's evidence was insufficient to support the jury's finding. He asserts that the government's expert witness, Ms. Mary Burns, failed to establish through her testimony that the alleged controlled substance found in Mr. Davis' car was cocaine base, crack cocaine, rather than simply cocaine base. Crack cocaine is considered a cocaine base, but it is not the only form of cocaine base. *United States v. Butler*, 988 F.2d 537, 542-43 (5th Cir.), *cert. denied*, 114 S.Ct. 413 (1993) (stating the term "cocaine base" in § 841(b) encompasses non-crack forms of cocaine base). Davis argues that only crack cocaine qualifies for the enhanced penalties under U.S.S.G. § 2D1.1(c). *United States v. Edwards*, 397 F.3d 570 (7th Cir. 2005). He argues that because Ms. Burns was unable to identify any of the components, such as baking soda, ether, or ammonia, needed to convert cocaine base into crack cocaine, she was unable to prove that Davis possessed crack cocaine. As such, he believes he should not have received the enhanced penalties under U.S.S.G. § 2D1.1(c).

When faced with an insufficiency of evidence claim, a federal court on *habeas corpus* review may not "make its own subjective determination of guilt or innocence;" instead, it must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 320 n.13 (1979); *Id.* at 319 n.12 (citations omitted). The court is not at liberty to substitute its conclusions for those of the jury. Although an insufficiency claim can be made on *habeas corpus* review, the analysis is limited.

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Herrera v. Collins*, 506 U.S. 390, 401 (1993) (quoting *Jackson*, 443 U.S. at 318-19).

Applying this standard, the court finds that the record contains sufficient evidence from which a rational trier of fact could determine beyond reasonable doubt that the substance at issue was crack cocaine. The government's expert, Ms. Burns, testified in court that the substance tested contained cocaine base, also known as crack cocaine:

| | |
|---|---|
| Q [Mr. Spillers]. | As a result of those tests and analyses did you identify what the substance is? |
| A [Ms. Burns]. | Yes, I did. |
| Q. | And what is that? |
| A. | I was able to conclude that state submission – I'm sorry – federal Government Exhibit Number Seven contained cocaine base. |
| Q. | Is that what's also known as crack cocaine? |
| A. | Yes, it is. It's the smokable form of crack cocaine. |

Davis Trial Tr., p. 326, lines 8-17. The jury was properly instructed by the court regarding crack cocaine, and, after deliberations the jury returned a guilty verdict for possession with the intent

to distribute in excess of 50 grams of crack cocaine as charged in the indictment. Therefore, this claim is denied.

## Waiver of Right to Counsel

Davis next contends that the court abused its discretion and prejudiced him by granting his request to waive his Sixth Amendment right to counsel without having first fully explained the rights he would be waiving and the adverse effects of that waiver. He alleges that his colloquy with the court regarding his motion to waive counsel was constitutionally inadequate to support a finding that he desired to represent himself. He also argues that his waiver of assistance of counsel was not knowingly or intelligently given; therefore his self-representation violated the Sixth Amendment.

The Sixth Amendment grants defendants the constitutional right to represent themselves in federal court. *Faretta v. California*, 422 U.S. 806, 812-21 (1975). For a defendant to exercise his right to self-representation, he must "'knowingly and intelligently' forego counsel, and the request to proceed *pro se* must be 'clear and unequivocal.'" *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir.), *cert. denied*, 479 U.S. 868 (1968) (citations omitted). The assertion of this right proceeds in two steps: first, the defendant must unequivocally inform the court of his desire to represent himself; and, second, "the court must conduct a *Faretta* hearing to determine whether the defendant is 'knowingly and intelligently' forgoing his right to appointed counsel and whether, by post-invocation action, he has waived the request [to proceed *pro se*]." *United States v. Cano*, 513 F.3d 503, 512-516 (5th Cir. 2008). "Where a fundamental constitutional right, such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver." *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991), *cert. denied*, 502 U.S. 1006 (1991). When a defendant, unskilled in the law, does not make a clear election to forego counsel, a court should not infer that the defendant has opted to take his own defense. *Id.*

Davis argues that his request to represent himself was only an attempt to bring to the attention of the court that his attorney was not doing a proper job of defending him. He claims that as he was trying to highlight the inadequacies of his counsel, he never "unequivocally" expressed his desire to represent himself. He argues that his responses to the questions from the court regarding his decision to dismiss his lawyer and represent himself illustrate his reluctance. The relevant portion of the hearing transcript follows:

| | |
|---|---|
| The Court: | Let the record reflect that we're now in chambers with counsel for the Government, Mr. Spillers is present and counsel for the defendant, Mr. Mink, and the defendant in this case, Mr. Davis. And I am told that Mr. Davis wishes to make a statement to the Court whereby he wants to fire his lawyer and represent himself. |

. . . .

| | |
|---|---|
| The Court: | All right. Mr. Davis, you want to state into the record what your position is. |
| The Defendant: | I would like to motion the Court to dismiss counsel on the grounds of ineffective assistance of counsel whereas counsel has refused to adhere to the advisory of my defense and submit motions that are very vital to my case. |
| The Court: | All right. Before we go any further, you understand that you do have the right to counsel and that counsel has been appointed for you? |
| The Defendant: | Yes, sir. |
| The Court: | Do you understand that? |
| The Defendant: | Yes, sir. |
| The Court: | And do you appreciate the fact that your lawyer has special training in the law for the purposes of defending defendants in court? |
| The Defendant: | Yes, sir. I have the utmost respect for that, sir. |
| The Court: | And I'm not trying to embarrass you or anything, but do you feel like you have the experience to represent yourself in court? |

| | |
|---|---|
| The Defendant: | Not experience whereas cross examining witnesses and so forth, yes, sir. |
| The Court: | You feel like you do have it, the ability to do that? |
| The Defendant: | Yes, sir. |
| The Court: | Have you had prior experience at representing yourself? |
| The Defendant: | No, sir. |
| The Court: | How much education do you have? |
| The Defendant: | Associate's degree, sir. |
| The Court: | In junior college? |
| The Defendant: | Yes, sir. |
| The Court: | Where was that? |
| The Defendant: | Coahoma Community College. |

. . . .

| | |
|---|---|
| The Court: | I'm concerned about a defendant's right to represent himself and balance that against the disruption of the trial process. I think Mr. Mink [defense counsel] has done a very good job in representing this defendant. I'm not sure that the defendant understands that Mr. Mink has won some of the early battles here and I think he has done a good job. And we still have other things to do in this case that are going to require a good legal mind, that includes writing - - getting the jury instructions approved and some other matters. Are you sure that's what you want to do? To represent yourself? |
| The Defendant: | I honestly, I don't, Your Honor, but my counsel feels like I'm putting his expertise, his profession in question. There lies a conflict because, you know, I feel I suffered a great prejudice from the Government and I know that this motion is right, but yet he refuses to – I wouldn't say refuse, he advises me that it is not a good move at the moment. If it's possible, sir, I would like to proceed *pro se* with counsel as stand-by, if that's possible sir. If that's fine with Mr. Mink, sir. |
| The Court: | Well, I want you to know that by making that request, you're waiving your right to have the attorney represent you and if we proceed, I would like Mr. Mink to be there also, but I don't want |

>     him to have the responsibility that a lead attorney would have.
>     You're putting him in a very difficult position. Are you telling me
>     that you knowingly and intelligently waive the right to have Mr.
>     Mink represent you in the courtroom?

The Defendant: Yes, sir.

Davis Trial Tr., pages 158-66. According to the record, Davis informed the court of his desire to represent himself, thereby satisfying the first step of this process. Davis expressed a clear desire to represent himself – but with counsel present in standby capacity. His statements at the hearing and in chambers reveal that he wished to file various motions, but that his attorney would not do so for strategic reasons. Davis thus wished to have a court-appointed attorney – but one who would completely defer to him on all matters of strategy. Attorneys cannot, however, perform their duties adequately under such limitations. The court explained the benefits of having appointed counsel and the pitfalls of proceeding without counsel, and Davis requested a middle path – proceeding with his attorney present in a standby capacity only. Under this arrangement, Davis could make all of the strategic choices – yet have counsel nearby for consultation.

Davis also argues that the court erred in accepting his request for self-representation because it was not "knowingly and intelligently" made. Davis contends that as the court never cautioned him about the dangers of such a course of action, it failed to establish that "he [knew] what he [was] doing and his choice [was] made with eyes open," and, his waiver was invalid. *Faretta*, 422 U.S. at 835.

"In order to determine whether the right to counsel has been effectively waived, the proper inquiry is to evaluate the circumstances of each case as well as the background of the defendant." *Wiggins v. Procunier*, 753 F.2d 1318, 1320 (5th Cir. 1985). In *Martin*, the Fifth Circuit articulated a list of factors to be considered in determining whether a defendant's motion

has been "knowingly and intelligently" made:

> The Court must consider the defendant's age and education, and other background, experience, and conduct. The Court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

*Martin*, 790 F.2d at 1218 (citations omitted). Applying these factors, no doubt exists as to whether Davis' waiver was knowingly, voluntarily, and intelligently made.

In a collateral attack on a conviction defended *pro se*, the defendant has the burden to prove that he did not competently or intelligently waive his right to the assistance of counsel. *Iowa v. Tovar*, 541 U.S. 77, 92 (2004). The record establishes that Davis was informed of his right to counsel and warned of the dangers and pitfalls of representing himself. The court questioned Davis regarding his background, education, and experience. The court also had ample opportunity to witness Davis' conduct during the first day of trial and on the morning of the second day of trial. Based on the reasons stated above, the court is satisfied that Davis understood his rights, and that the court committed no error by allowing him to proceed *pro se* with appointed counsel acting in a standby capacity.

## Sufficiency of Indictment

Davis next challenges that the vague terminology of the indictment violated his right to trial by jury. Count one of the indictment states:

> On or about September 8, 2003, in the Northern District of Mississippi, ELEKE DAVIS, defendant herein, did knowingly and intentionally possess with intent to distribute in excess of 50 grams of a mixture and substance containing cocaine base, crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a), (b)(1)(A).

Davis states that the indictment was insufficient because it alleged only a weight "in excess of 50 grams," rather than a certified weight. He argues that this vague wording of a fact that increased his sentence violates the Supreme Court's holdings in *Booker, Blakely* and *Apprendi*, which

require that any fact, which is necessary to secure a conviction or increase a sentence, be present in the indictment and presented to a jury. *See United States v. Booker*, 543 U.S. 220, 231-232 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Davis contends that the indictment should have alleged that the defendant did knowingly and intentionally possess with intent to distribute a specific amount of cocaine base, crack cocaine; however, the fact needed to increase his sentence was not that he possessed 58.8 grams of crack cocaine, but rather that he possessed more than 50 grams. The indictment states only that Davis carried in excess of fifty grams of the controlled substance. Substantial evidence concerning the weight of the substance was offered by the government's expert witness, and a proper instruction was given by the court regarding the weight of the crack cocaine for the jury to use in its deliberations. Accordingly, this claim is without merit.

**Ineffective Assistance of Counsel**

Davis next argues that he was denied the right to effective assistance of counsel. In support of his claim, Davis claims that his counsel was ineffective on three grounds, his: 1) failure to subpoena the government's confidential witness; 2) ineffective appellate argument that the government should have been required to identify and produce the confidential informant at trial; and 3) failure to give the petitioner any advise or trial strategy after he was appointed as stand-by counsel.

"The ultimate determination whether counsel was constitutionally ineffective is a mixed question of law and fact that federal habeas courts have traditionally reviewed de novo." *Carter v. Johnson*, 110 F.3d 1098, 1110 (5th Cir. 1997); *see, e.g., Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996); *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994). "To establish ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was

deficient and (2) the deficient performance prejudiced his defense." *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency determination is not unguided. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a "highly deferential" manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). If counsel's performance is deemed to have been deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

Davis first argues that his counsel was ineffective at trial by refusing to subpoena a confidential informant as a witness. The government's refusal to provide the identity of the confidential informant was previously addressed in Davis' direct appeal. In an unpublished opinion, the Fifth Circuit held that the district court did not abuse its discretion in refusing to disclose the informant's identity in this case. *Davis v. United States*, 2005 WL 946573 (5th Cir. 2005). This issue having been raised on direct appeal is thus barred from being raised on collateral review under § 2255. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986), *cert. denied*, 476 U.S. 1118 (1986). However, even assuming Davis' contention of ineffective assistance of counsel as it relates to counsel's refusal to subpoena the confidential informant is cognizable under § 2255, his allegation is baseless.

Davis has failed to establish the cause prong of *Strickland*, which requires a showing that counsel's performance was deficient. Mr. Mink presented the issue before the court on whether

the government had a duty to disclose the identity of the confidential informant. The district court ruled that the government was not required to produce the confidential informant, and the court's ruling was upheld by the Fifth Circuit. Davis' assertion that he was denied effective assistance of counsel as a result of Mr. Mink's refusal to subpoena the confidential informant is totally without merit in light of the ruling of the district court and the subsequent affirmance by the Fifth Circuit. By failing to satisfy the "cause" prong of *Strickland*, Davis' claim of ineffective assistance of counsel must fail.

Although the court finds counsel's performance to have been competent within the meaning of the Sixth Amendment, the court also concludes that Davis has failed to establish the prejudice prong of *Strickland*. To find prejudice, a court on habeas review must look past mere outcome determination. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). The test formulated in *Strickland*

> requires that a habeas petitioner prove not only that counsel's performance was deficient, but also that the deficient performance actually prejudiced the defense to such an extent that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.

*Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995) (citing *Strickland*, 466 U.S. at 694. "[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceedings was fundamentally unfair or unreliable is defective." *Armstead*, 37 F.3d at 207 (internal citation omitted). Furthermore, the "unreliability" or "unfairness" mentioned in *Strickland* does not occur unless the ineffectiveness of counsel deprives the defendant of a "substantive or procedural right to which the law entitles him." *Fretwell,* 506 U.S. at 372. Davis was not deprived of any constitutional right due to counsel's alleged deficiencies and consequently was not deprived of the effective assistance of

counsel. Thus, the court recommends that this claim be denied as without merit.

Davis also contends that Mr. Mink was ineffective in his representation on direct appeal. Specifically, he asserts that Mr. Mink mistakenly tried to shift the burden to the government regarding whether the government proved probable cause for the warrantless search of his vehicle. The ultimate determination of the reasonableness of a search is a conclusion of law, which is viewed in the light most favorable to the prevailing party. *See United States v. Ramirez*, 963 F.2d 693, 705 (5th Cir. 1992), *cert. denied*, 506 U.S. 942 (1992). Davis argues that Mr. Mink's contention that the government failed to prove probable cause was deficient because the burden of proof was on the defendant in this case. The court, however, is not satisfied that Davis has satisfied either prong of *Strickland* through this assertion.

Davis has provided no evidence that would indicate that Mr. Mink's argument would not be considered sound trial strategy, other than the subsequent denial of his appeal. Further, he has failed to show that a reasonable probability exists "that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp*, 107 F.3d at 282 n.9. Therefore, because of Davis' inability to demonstrate his counsel's incompetency as to criminal matters or any resulting prejudice, his claim for ineffective assistance of appellate counsel must fail.

Davis also asserts that Mr. Mink should not have been assigned by the court to act as standby counsel in the trial of this case. However, Mr. Mink was assigned by the court to assist Davis at Davis' specific request: "[i]f it's possible, sir, I would like to proceed pro se with counsel as stand-by, if that's possible sir. If that's fine with Mr. Mink, sir." Davis Trial Tr., 166. Further, Davis has failed to satisfy the "cause" prong of *Strickland* because he has not alleged any specific misconduct by Mr. Mink in his performance as standby counsel. Thus, the court determines that these claims should be denied as without merit.

### Counsel's Actions at Sentencing and on Direct Appeal

In ground five of his objections, Davis asserts that the court abused its discretion by allowing appointed counsel, Mr. Mink, to represent the defendant at sentencing and in his direct appeal, despite the fact that he had been granted a request for self-representation during his trial. Davis argues that this error by the court infringed upon his rights as a *pro se* defendant. A defendant's right to represent himself in federal court extends to sentencing. *United States v. Davis*, 285 F.3d 378, 385 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 618 (2002). The right to proceed *pro se*, however, can be waived by a defendant through his subsequent conduct. *McKaskle v. Wiggins*, 465 U.S. 168, 182 (1984). "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *Id.* at 183.

There is nothing in the trial record to support that Davis raised any objection to representation by Mink at his sentencing hearing – or that he asserted his right to self-representation at that time. In representing Davis at his sentencing hearing, Mink argued several objections to the Presentence Report on behalf of his client, and he subsequently raised some of the same objections on direct appeal. Furthermore, at trial, Davis specifically requested Mink to serve in the capacity of standby counsel. Davis never clearly and unequivocally reiterated his desire to represent himself, nor did he ever object to Mr. Mink's representation at his sentencing hearing. Davis, through his expressed approval of Mr. Mink's participation, effectively waived his right to self-representation, therefore, any claim which alleges that counsel's participation deprived him of control over his own defense is obliterated. *See Id.* at 182.

**Error In Jury Instructions**

Davis' final challenge to his conviction is that the court erred in instructing the jury to find whether the defendant possessed "cocaine base or crack cocaine," rather than just "cocaine base, crack cocaine" which was alleged in the indictment. He argues that the court's instructions to the jury created a scenario where he could be convicted for possession of either crack cocaine or cocaine base, although only being charged with possession of a single substance, crack cocaine. He alleges that the court's failure to inform the jury of the guidelines to be applied upon a conviction for cocaine base, rather than crack cocaine, misled the jury into believing that a defendant convicted of possession of cocaine base would be entitled to the same penalty factors as a defendant convicted of possession of crack cocaine.

Davis argues that the terms "cocaine" and "cocaine base" are synonymous and refer to identical substances. He asserts that the use of these terms results in an ambiguity in the application of the sentencing provisions of 21 U.S.C. § 841(b) and the applicable sentencing guidelines, which provide different base offense levels for possession of cocaine, and possession of cocaine base. Davis relies on the Seventh Circuit's decision in *United States v. Booker*, which determined that the terms, cocaine and cocaine base, are synonymous because chemically they are identical. *United States v. Booker*, 70 F.3d 488, 489 (7th Cir. 1995), *superseded by statute*, U.S.S.G. § 2D1.1, *as recognized by United States v. Earnest*, 129 F.3d 906 (7th Cir. 1997). Davis asserts that for this reason his offense level should have been determined by application of the guideline range for powder cocaine and not the guideline range for crack cocaine.

U.S.S.G. § 2D1.1, however, states that:

'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c)(D) (2008). The sentencing guidelines clearly state that crack and cocaine

base are synonymous terms with respect to sentencing. The record in this case supports the finding that the substance Davis possessed was crack cocaine. Therefore, Davis' argument that the court should have instructed the jury on the statutory penalties for powder cocaine is without merit. Davis was properly indicted, tried, and sentenced under the applicable sentencing guidelines for possession with the intent to distribute in excess of 50 grams of cocaine base, crack cocaine. For the reasons set for above, Eleke Davis' motion to vacate, set aside, or correct sentence is denied.

### Eleke Davis' 18 U.S.C. § 3582(c) Claims

Eleke Davis argues in the addendum to his 28 U.S.C. § 2255 motion that his due process rights were violated by the district court's failure to conduct a competency hearing on its own order to determine whether he was competent to direct his trial strategy and waive his right to counsel. He asserts that the court should modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(I), which allows for modification when "extraordinary and compelling reasons warrant such a reduction." Davis contends that he was mentally incompetent to waive his right to counsel, and that the court failed to conduct an adequate inquiry to determine his mental capacity. The level of competence required to waive the right to counsel is the same as that required to stand trial. *Godinez v. Moran*, 509 U.S. 389, 397 (1993). Therefore, if Davis was able to stand trial, he was competent to waive his right to counsel.

Requiring an incompetent person to stand trial is a clear denial of the right to due process. *Pate v. Robinson*, 383 U.S. 375 (1966). In *Dusky v. United States*, the Supreme Court authored a test for the determination of a defendant's competency. 362 U.S. 402 (1960). The test defined a defendant's competency as a sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding, and a reasonable degree of rational understanding of the proceedings against him. *Id.* at 402. Congress codified the determination

of a defendant's competence to stand trial in the Comprehensive Control Act of 1984, which provides:

> (a) **Motion to determine competency of defendant.** At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

P.L. 98-473, 18 U.S.C. § 4241.

When sufficient evidence exists that creates a bona fide question as to the defendant's mental ability to stand trial, the court is required to hold a competency hearing. *Pate*, 383 U.S. at 385; *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980). The burden on the petitioner is not to affirmatively establish his incompetence, but rather to present sufficient evidence that would have required a judge to conduct a competency hearing. *Lokos*, 625 F.2d at 1261. Because neither side moved for the court to hold a competency hearing, "[t]he question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense?" *Id.*

"Different standards govern the substantive and procedural dimensions of the right not to be tried while incompetent." *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983), *cert. denied*, 464 U.S. 984 (1983). In order to prove a substantive violation, the defendant must offer "clear and convincing evidence to raise a threshold doubt about competency." *Id.* (citing *Lokos*, 625 F.2d at 1261). To show a procedural violation, a defendant is obligated to provide evidence that was before the court which would have raised a legitimate question regarding competency. *Id.*

(citing *Pate*, 383 U.S. at 385). Davis alleges primarily a procedural violation, contending that because of his extensive psychiatric history, which includes three suicide attempts, as well as evidence of anxiety, insomnia, paranoia, and depression, the court bore a constitutional duty to conduct a competency hearing.

When a defendant seeks *habeas corpus* relief on grounds of a violation of a *Pate* procedural right to a competency hearing, he bears the burden of proving that the facts known to the court would raise a bona fide doubt as to the defendant's competency. *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979), *cert. denied*, 444 U.S. 983 (1979). "While the Supreme Court has not articulated a general standard for the nature or quantum of evidence necessary to trigger a competency procedure, it has focused on three factors to be considered: the existence of a history of irrational behavior, defendant's demeanor at trial, and prior medical opinion." *Chenault v. Stychcombe*, 546 F.2d 1191, 1192-93 (5th Cir. 1977), *cert. denied*, 98 S.Ct. 231 (1977).

The only evidence suggesting that Davis had a reduced capacity at trial was his statement to the pretrial officer that he has had a preoccupation with death, which stemmed from his father's murder when the petitioner was five years old – and was later exacerbated by an extended stay at Mississippi State Penitentiary at Parchman from the age thirteen to nineteen. Although Davis had a history of irrational behavior, his demeanor at trial indicates that he was competent at that time. *McInerney v. Puckett*, 919 F.2d 350, 352 (5th Cir. 1990) ("The defendant may have been incompetent six years earlier – we do not know – but that does not mean he was incompetent at the time he stood trial").

Nothing in the record advances Davis' argument that he lacked the ability to consult with his lawyer with a reasonable degree of understanding or lacked the ability to rationally understand the proceedings. To the contrary, he had consulted with his attorney extensively and

actively participated in his defense. Indeed, he understood his attorney's strategy, disagreed with it, and insisted upon proceeding as his own counsel, rather than remain subject to the strategies adopted by his counsel. The district court, having observed Davis' demeanor and behavior during the trial, determined that not only was he competent enough to assist in his own defense, but to waive his right to counsel as well. "'In doubtful cases the exercise of [the trial judge's] power of observation often proves the most accurate method of ascertaining the truth. . . .'" *Fulwood v. Maggio*, 462 U.S. 111, 118 (1983) (quoting *United States v. Oregon Medical Society*, 343 U.S. 326 (1952)).

The record indicates that at no time did the court observe any irrational behavior by Davis sufficient to raise a bona fide doubt as to his competency. Further, the failure of a defendant or his counsel to raise the competency issue is persuasive evidence that no *Pate* violation has occurred. *Reese*, 600 F.2d at 1092. In this case, there was no evidence before the court indicating that Davis was incompetent or that he was unable to participate in his defense or understand the proceedings against him. For these reasons, the court denies the petitioner's motion to modify term of imprisonment pursuant to 18 U.S.C. § 3582(c).

In sum, for the reasons set forth above, the instant motion by Eleke Davis to modify term of imprisonment pursuant to 18 U.S.C. § 3582(c), and his motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 are **DENIED**.

**SO ORDERED**, this the 2nd day of April, 2009.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**